Margaret DICKSON and Madolyn
Dickson, Respondents,

v.

NATIONAL SUPERMARKETS,
INC., Appellant.

No. 51722.

Missouri Court of Appeals,
Eastern District,
Division One.

May 5, 1987.

James A. Gottschalk, St. Louis, for appellant.

Donald S. Singer, Andrew F. Wasserman, Cupples, Edwards, Cooper & Singer, St. Louis, for respondents.

CRIST, Judge.

Personal injury-products liability action for injuries received by respondents (plaintiffs) as a result of ingesting "gooey butter cake" purchased from appellant (National). Judgments were entered on jury verdicts in favor of each plaintiff in the aggregate of $4,500. We affirm.

National contests submissibility. We view the evidence in a light favorable to the judgment. *Sanford v. Bi-State Development Agency*, 705 S.W.2d 572, 574 [1] (Mo.App.1986). On February 8, 1980, plaintiffs purchased a gooey butter cake from National. On this date, plaintiff Margaret, a sixty-two year old mother of twenty-one children, was preparing a supper for herself, two of her daughters, plaintiff Madolyn and Francis Dickson, and three of her grandchildren, DeAndre Dickson (about age four), Anthony Dickson (age nine) and Daniel Montgomery (age twelve). At approximately 5 p.m. to 6:15 p.m. on the same date, all the family members sat down and ate some of the cake to "tide them over" until dinner. Shortly thereafter, all of the family members became ill. Plaintiff Madolyn testified the cake was not as moist as it normally would be, it left a bitter aftertaste, and the middle of the cake turned dark brown by about 11 p.m.

All the family members began to have symptoms of nausea, vomiting, cramping, headaches, diarrhea and fever. Plaintiff Margaret testified the family had no food in common that day other than the gooey butter cake.

Shortly after midnight, in the early morning of February 9, plaintiffs and family members DeAndre, Anthony, Francis and Daniel went to the emergency room at

St. John's Mercy Medical Center. Both plaintiffs were treated for food poisoning.

Plaintiffs' expert witness, a licensed medical doctor, testified by deposition he determined from the examination of the emergency room medical reports of plaintiffs that the emergency room physicians were correct in diagnosing plaintiffs as having food poisoning. He further testified, through the use of a hypothetical question, there was a causal link between the gooey butter cake and the ensuing illness.

■ There was sufficient evidence the gooey butter cake was unwholesome, not fit for human consumption, and caused plaintiffs' illnesses. Plaintiffs and other family members ate the cake which was not as moist as usual, had a bitter aftertaste, and turned dark in color. They had similar symptoms. Within approximately six hours after ingesting the cake, the family members sought emergency room treatment for food poisoning. A medical doctor testified there was a causal connection between the cake and the illness. *Perkins v. Kroger Co.*, 592 S.W.2d 292 (Mo.App.1979); *Williams v. Coca-Cola Bottling Co.*, 285 S.W.2d 53 (Mo.App.1955).

■ National submits that even if the doctor's testimony provided a causal link between the cake and the illness, plaintiff Madolyn cannot rely on this testimony. National asserts the hypothetical assumed the only food eaten in common was the gooey butter cake, and plaintiff Madolyn directly contradicted this assumption when she testified she and other family members ate dinner.

Plaintiffs' attorney posed a hypothetical question to the doctor which included as a fact to be assumed that "the only thing which *all* the five people ate in common was that gooey butter cake." (Emphasis added.) The doctor's response was "given the facts as you have given me make it [sic] extremely likely that there is a cause effect relationship between the ingestion of this gooey butter cake and the illness that ensued." On cross-examination he was asked if this opinion would be changed if he were told that *all* of the people had eaten dinner together. He responded "it would in fact change my opinion if they, in fact, ate the same food other than the gooey butter cake."

The evidence was conflicting as to whether Daniel had dinner with the family. Plaintiff Madolyn omitted Daniel from the family members who had dinner together. She testified Daniel had some of the cake "After dinner, the six-fifteen time." Daniel did not remember whether or not he had eaten dinner with the family. He became ill with similar food poison symptoms and was taken to the emergency room with the others. Further, plaintiff Madolyn did not specifically mention plaintiff Margaret as one of those who had dinner. She stated, "On that particular day, we had Anthony, DeAndre, Francis and Lance and myself." While plaintiff Madolyn testified those who did eat dinner had steak, salad, mashed potatoes, gravy and drink, she did not testify those who became ill had any food in common. We cannot infer such.

In short, *all* of those who were ill did not eat other food in common, and there was no contradiction by plaintiff Madolyn of the facts used in the hypothetical to preclude her from using plaintiff Margaret's evidence there was no other food eaten in common.

Plaintiffs' motion to strike supplemental legal file is denied.

Judgment affirmed.

KELLY, P.J., and CARL R. GAERTNER, J., concur.